IN THE UNITED STATES DISTRICT COURT
                  FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                              WESTERN DIVISION


ESSEX INSURANCE COMPANY                                        PLAINTIFF

VS.                              CIVIL ACTION NO. 5:04-cv-102(DCB)(JCS)

MASSEY LAND & TIMBER, LLC;
JOE BONELLI CONSTRUCTION COMPANY, INC.;
HARTFIELD BUILDERS, INC.;
BREWER CONSTRUCTION, INC.;
DAVID BREWER, INC.; and
PEAR ORCHARD VICKSBURG, INC.                                   DEFENDANTS


                         MEMORANDUM OPINION AND ORDER

    This cause is before the Court on the parties' supplemental briefs in response to the Court's Order of November 22, 2005. On September 30, 2005, the Court entered a Memorandum Opinion and Order denying the plaintiff's motion for summary judgment. The plaintiff moved for reconsideration, which was denied on November 22, 2005. However, the Court, <u>sua sponte</u>, ordered additional briefing on the issues set forth in its November 22, 2005 Memorandum Opinion and Order. Having carefully considered the submissions of the parties, and having heard oral argument of counsel on January 30, 2006, the Court finds as follows:

    The first issue is whether the following subsidence exclusion, found in the first insurance policy issued by Essex to Massey, with an effective policy period of June 10, 1999 to June 10, 2000, bars coverage:

        This policy does not cover claims, loss, costs or expense
        for "Bodily Injury," "Personal Injury," disease or
        illness, including death, or to loss of, damage to, or

> loss of use of property, for past, present or future claims, caused by, resulting from, attributable or contributed to, or aggravated by the subsidence of land as a result of landslide, mud flow, earth sinking, shift or shrinking, resulting from your operations or any contractor or subcontractor regardless of whether the first manifestation of same occurs during the policy period or prior [or] subsequent thereto.

(Policy 3AQ2304, Subsidence Exclusion). The second policy, with an effective period of June 10, 2000 to June 10, 2001, does not contain a subsidence exclusion. (Policy 3AQ4829).

Essex urges the Court to find that only the first policy applies, inasmuch as all of Massey's work was performed during the first policy period, and that the subsidence exclusion found in the first policy therefore bars coverage. The defendants urge the Court to find that the second policy applies, and that the subsidence exclusion is not a bar to coverage since it is not found in the second policy. Both of the Commercial General Liability Coverage policies provide as follows:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which the insurance does not apply ... .
>
> b. This insurance applies to "bodily injury" and "property damage" only if
>
>> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place

2

>    in the "coverage territory"; and
>
>    (2) The "bodily injury" or "property damage" occurs during the policy period.
> ... .

(Coverage A(1)(a),(b)(1)&(2)). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Definitions V(12)).

In Joe Harden Builders, Inc. v. Aetna Casualty and Surety Company, 486 S.E.2d 89, 90 (S.C. 1997), The South Carolina Supreme Court, interpreting similar language, found:

> This provision clearly focuses on the time the damage occurs and not on the time of the underlying event that eventually caused the damage. An overwhelming majority of jurisdictions have rejected the argument that coverage is triggered at the time of the injury-causing event because such an interpretation conflicts with this provision of a standard occurrence policy.

Id. at 90. Although there is no case applying Mississippi law directly on point, this Court finds that the Mississippi Supreme Court would follow the majority position that coverage is triggered at the time of injury or damage, based on the clear policy language, the rule that the terms of an insurance policy "must be given their plain meaning and enforced as written," American States Ins. Co. v. Netherly, 79 F.3d 473, 475 (5th Cir. 1996)(applying Mississippi law), and the general principle that a tort is not complete until the injury occurs, Williams v. Kilgore, 618 So.2d 51, 54 (Miss. 1992).

3

Previously, the Court found that there was a genuine issue of material fact concerning when and how the damages to third parties occurred, since the Court did not have sufficient information before it. Having now received the parties' supplemental briefs, the Court finds as follows:

It is undisputed that Massey's work for the Pear Orchard subdivision was completed in August or September of 1999. Following the completion of Massey's dirt work, the sewer and water lines were constructed, along with the storm and drainage culverts. The utilities, Bell South and Entergy, were then requested to lay their utility lines. Entergy, but not Bell South, laid its utility lines before the construction of houses began. In June of 2000, construction of the first home in the subdivision was completed. By October of 2000, approximately twelve homes had been completed. Bell South did not install its utility lines until October or November of 2000. During the time that the phone lines were being installed, the telephone trenches were left open to the elements for several weeks. Testimony of Webber Brewer, Brewer v. Brewer, pp. 79-81; Testimony of Bruce Massey, Brewer v. Brewer, pp. 118, 121; Testimony of Joe Bonelli, Brewer v. Brewer, pp. 632-633.[1] Furthermore, during the digging of these utility lines, six sewer

---

[1] Brewer v. Brewer refers to David Brewer, Inc., et al. v. Brewer Construction, Inc., et al., cause no. 01-0117-CI in the Circuit Court of Warren County, Mississippi, the underlying state court action.

pipes or "taps" were pierced by Bell South's contractor, Curtis Construction.  The City of Vicksburg notified Webber Brewer that mud had been found in the sewer line coming from the subdivision, and Pear Orchard Vicksburg, Inc., paid to have the sewer cleaned out and the sewer lines fixed.  Testimony of Webber Brewer, Brewer v. Brewer, pp. 79-80; Testimony of David Brewer, Brewer v. Brewer, p. 158.  In mid-December of 2000, cracks were first noticed in one of the houses, and were repaired.  Thereafter, between the end of February and early March 2001, five additional houses were reported as experiencing settlement damage, and further damage was reported in the house that had already been repaired.  In addition, the paved street was reported damaged as a result of settlement.  Testimony of Webber Brewer, Brewer v. Brewer, pp. 54-57, 76-79; Testimony of David Brewer, Brewer v. Brewer, p. 160-163.

Having determined that coverage is triggered at the time of injury or damage, not the time of completion of Massey's work, the Court must now determine when the injury or damage occurred.  It is undisputed that the property damage occurred not all at once but over a continuous period.  The issue is whether any events occurred during the second policy period which would trigger that policy.  Courts have developed four different theories to determine when injury or damage occurred:

The "exposure" theory fixes the date of injury as the date of exposure to the harm that causes the damage, rather than the

resulting damage to the property.  Y.M.C.A. v. Allstate Ins. Co. Of Canada, 275 F.3d 1145, 1149 (D.C. Cir. 2002).

The "manifestation" theory holds that coverage is not triggered until the moment at which the damage becomes apparent or is discovered.  Id.

The "injury-in-fact" theory looks to the time at which the damage actually occurred, rather than when exposure took place or when the damage became manifest.  Id.

Finally, the "continuous trigger" theory includes all times from exposure through progression to manifestation.  Id.

The majority of courts that have considered the issue in this context have adopted the "continuous trigger" theory.  Society Insurance v. Town of Franklin, 607 N.W.2d 342, 346 (Wis. App. 2000); Spaulding Composites Co., Inc. v. Aetna Casualty and Surety Co., 819 A.2d 410, 415 n.3 (N.J. 2003)(citing examples); see also Owens-Illinois, Inc. v. United Insurance Co., 650 A.2d 974, 983 (N.J. 1994)(continuous and progressive nature of damage made continuous trigger appropriate).

Because the Mississippi Supreme Court, thus far, has not spoken directly to the issue before this Court, the Court must make an "Erie-guess" as to how the Mississippi Supreme Court would rule.  Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938); United Parcel Service, Inc. v. Weben Industries, Inc., 794 F.2d 1005, 1008 (5th Cir. 1986)("when making an Erie-guess in the absence of explicit

guidance from the state courts, we must attempt to predict state law, not to create or modify it.").

This Court finds that the Mississippi Supreme Court would follow the majority position under the facts of this case and apply the "continuous trigger" theory. The policy language in the Essex policies pertaining to "occurrence" and "property damage" is clear and unambiguous, with no temporal limitations. The definition of "occurrence" references a "continuous or repeated exposure to substantially the same general harmful conditions." (Definitions V(12)). The policies cover "property damage" which "occurs during the policy period." (Coverage A(1)(b)(2)). This language is "consistent with the continuous trigger theory, which defines damage broadly to include the entire process of damage from exposure to manifestation when the damage is of a continuous and progressive nature." Y.M.C.A., 275 F.3d at 1151-52 (citing Keene Corp. v. Ins. Co. Of North America, 667 F.2d 1034, 1045-47 (D.C. Cir. 1981)).

Damage to structures in the Pear Orchard subdivision was reported beginning in December of 2000, and the second policy has an effective period of June 10, 2000 to June 10, 2001. The Court therefore finds that the subsidence exclusion is not a bar to coverage since it is not found in the second policy.

The next issue is the effect of the following exclusion found in both Essex policies:

> This insurance does not apply to:
>
> a. Expected or Intended Injury
>
> > "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. ...

(Coverage A(2)(a)). If Massey's acts were alleged to be intentional torts, the exclusion would clearly apply. See Farmland Mutual Insurance Company v. Scruggs, 886 So.2d 714, 719 (Miss. 2004). However, the complaint in the underlying action alleges only negligent conduct. The issue then is whether the property damage was "expected or intended" from Massey's standpoint. As the Court noted in its September 30, 2005 opinion, this issue is the same as the third issue in this case, namely, in order for there to be coverage under the Essex policy, the property damage must have been caused by an "occurrence," which is defined by the Essex policies as an "accident." (Definitions V(12)).

In USF&G v. OmniBank, 812 So.2d 196 (Miss. 2002), the Mississippi Supreme Court held:

> An accident by its very nature, produces unexpected and unintended results. It follows that bodily injury or property damage, expected or intended from the standpoint of the insured, cannot be the result of an accident.

Id. at 200. It follows, then, that if the property damage was expected by Massey, there is no coverage. Id. In Allstate Insurance Company v., Moulton, 464 So.2d 507 (Miss. 1985), the Mississippi Supreme Court noted:

> The key ingredient is not merely a "happening," for that

8

>     would make every act or event an "accident"; rather, it
>     is the unexpected nature of the event or its aftermath.
>     7A Appleman, Insurance Law and Practice, § 4492 (Berdal
>     ed. 1979), states: "An accident is anything that happens
>     or is the result of that which is unanticipated and takes
>     place without the insured's foresight or anticipation
>     ....  As used in insurance policies it is simply an
>     [undesigned], sudden, and unexpected event, usually of an
>     afflictive or unfortunate character, and often
>     accompanied by a manifestation of force, but it does not
>     mean the natural and ordinary consequences of a negligent
>     act."

Id. at 509. The court set out the following test to determine whether an "accident" has taken place: (1) whether the insured's "acts were committed consciously and deliberately, without the unexpected intervention of any third force," and (2) whether "the likely (and actual) effect of those acts was well within [the insured's] foresight and anticipation." Id. (quoting Winkler v. Ohio Casualty Ins. Co., 441 A.2d 1129, 1132 (Md. App. 1982)).

In its November 22, 2005 opinion, the Court invited the parties to further brief the application of the Moulton test to the facts of this case. The parties are in agreement that Massey's acts were committed consciously and deliberately.

The next question is whether Bell South's acts of leaving its telephone trenches open, and puncturing the sewer pipes, constitute an "intervention," and, if so, whether that intervention was unexpected by Massey. In Moulton, the Mississippi Supreme Court elaborated on this part of the test in determining whether there has been an occurrence: "The only relevant consideration is whether ... the chain of events leading to the injuries complained of were

set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." 464 So.2d at 510.

In M & M Pipe and Pressure Vessel Fabricators, Inc. v. Roberts, 531 So.2d 615 (Miss. 1988), the Mississippi Supreme Court held: "In cases involving the issue of an intervening cause, this Court has laid particular stress on the concept of 'putting in motion.' That is, the original actor will not be absolved of liability because of a supervening cause if his negligence put in motion the agency by or through which injuries were inflicted." Id. at 618 (citations omitted). Stated another way, "[t]he question is, did the facts constitute a succession of events so linked together as to make a natural whole, or was there some new and independent cause intervening between the alleged wrong and the injury?" Id. (citations omitted).

As for the second part of the Moulton test, foresight and anticipation, the Mississippi Supreme Court in M & M Pipe stated: "In determining whether the actor's negligence was the proximate cause of the injury, it is not necessary that the actor should have foreseen the particular injury that happened; it is enough that he could have foreseen that his conduct could cause some injury." Id.

The Court finds that an evidentiary hearing is needed on the issues of foresight and anticipation, and the unexpected intervention of a third force. The Court realizes that these

issues were ostensibly before the Warren County Circuit Court in the state court action, but a question remains whether the state court's findings are dispositive of the insurance coverage issue. The parties should therefore be prepared to offer all summary judgment-type evidence in addition to making their legal arguments. Accordingly,

IT IS HEREBY ORDERED that Essex Insurance Company's motion for summary judgment **(docket entry 40)** is DENIED insofar as it seeks to bar coverage pursuant to the subsidence exclusion found in Policy 3AQ2304 (effective June 10, 1999 to June 10, 2000), since a subsidence exclusion is not found in Policy 3AQ4829 (effective June 10, 2000 to June 10, 2001);

FURTHER ORDERED that the remaining issues as outlined above shall be heard at an evidentiary hearing, and counsel shall contact the Court upon receipt of this Memorandum Opinion and Order regarding the scheduling of the hearing.

SO ORDERED, this the 22nd day of May, 2006.

S/DAVID BRAMLETTE
UNITED STATES DISTRICT JUDGE